Good morning. May it please the Court, Jonathan Libby appearing on behalf of Appellant Danny Fabricant. Your Honors, we've raised several issues in this field. In light of time constraints, unless the Court has any objection, I'd like to focus on whether the defendant's right of self-representation was violated and also whether the District Court impermissibly infringed Mr. Fabricant's right to testify. With respect to the first issue, Mr. Fabricant's right of self-representation was effectively denied by the assigned co-counsel usurping control over the defense, by the government failing to serve Mr. Fabricant numerous documents that were necessary to defend himself, and by the Court denying numerous motions that would have given Mr. Fabricant the resources to be able to represent himself. The government's argument seems to be premised on its erroneous belief that Mr. Fabricant no longer represented himself once co-counsel had been assigned to him. But this is simply a case of hybrid representation. There does not appear to be in the case law any distinction between advisory counsel, standby counsel, or co-counsel. So, given that fact, the case law is pretty clear when you have hybrid representation. The defendant still is required to be able to maintain control over the defense. Here, as assigned co-counsel details at length in a declaration, Mr. Kennedy essentially took total control over this defense. I think that's an exaggeration to say that he took total control. He did control a certain number of things, it appears. Well, what is clear is that there were a number of things that he entered into agreements with the government with respect to viewing discovery, viewing a number of different documents and evidence that he did not share with Mr. Fabricant. He indicated he did this because he felt it was in his best interest to prepare for the defense. The problem is, of course, Mr. Fabricant then wasn't in a position to then be able to represent himself. Now, help me understand this. I mean, in a lot of cases, and this may or may not be one of them, but in a lot of cases, you don't want the client to see some of the documents. And if there's representation, which is not quite the case here, but if there's representation, we don't have FREDA. The client is simply being represented. The government or the State will reveal documents to the attorney under certain protective understandings. That's certainly true. Is that what was going on in this case? It was. Mr. Kennedy indicates that he entered into several protective orders with the government, which precluded him from providing Mr. Fabricant a lot of evidence. And is there something in here from which I can figure out whether if Mr. Fabricant had been representing himself without co-counsel, that he would have been able to see these documents at all? Well, a number of these agreements permitted Mr. Fabricant to be told and to, in fact, see them, but not to actually have them. Right. Or let me say it this way. To the degree that Mr. Fabricant was deprived of access or use of the documents, is there any showing that if he had been representing himself without the assistance of co-counsel, that he would have been allowed any greater access or use of the documents? I mean, that's what I'm trying to figure out is, you know. Sure. I mean, the documents that we're talking about here, it's just simple, straightforward discovery. I mean, we're not talking about things that were under seal or that were overdressed. That's my question. No, no. That's right. I mean, it's simply straightforward discovery and videotapes and reports of investigation, things of this nature, which if Mr. Fabricant had, in fact, been representing himself, he would have been entitled to see. But I guess if the government disagrees with that, it can tell me. Yeah. Okay. Well, absolutely. And what Mr. Kennedy has indicated is that he simply did not share a bunch of this stuff with Mr. Fabricant because he was focusing on his defense. So as a result, Mr. Fabricant did not have access to much of the information he needed in order to prepare the defense. How is this brought to the attention of the trial judge? It was brought to the attention of the trial judge at the end of the trial on a motion for a new trial. Well, isn't that a little late in a forensic claim? I don't believe it was too late at that point. This was on a new trial motion, so the court certainly was still in a position to order a new trial after discovering that all of these things had occurred. But we also need to make it clear to the trial judge what exactly was missing from his preparation and what handicap he had from the lack of access to documents and records. Well, he did not. But, of course, part of the problem is if Mr. Kennedy didn't make him aware that he had seen certain titles. Yeah, but we're being asked to say the trial judge was in error in not granting him a Feretta ride and taking up a month's time with his trivia. Well, I'm not criticizing the district judge. So if we say there was an error, how was it presented so that the judge could avoid it? Well, I'm not sure that it necessarily could be, because, again, Mr. Cabracant was not even aware that he was not being provided with a lot of this stuff. Didn't Kennedy say he reviewed the materials with him even though he didn't give it to him? I'm sorry, Your Honor? Didn't Kennedy say that he reviewed the materials with the ---- He reviewed some of the materials, but not all of the materials. And does the record indicate which he reviewed and which he didn't? That's not entirely clear, Your Honor. It's not. But what we also do know, and what is clear in the record, is that the government also failed to serve a number of documents on Mr. Cabracant as it was required to do. It now has essentially taken a position that Mr. Cabracant had counsel. They were only obligated to serve counsel. They weren't obligated to serve Mr. Cabracant. And this was even where the district court had issued multiple orders reminding the government that it was required to serve Mr. Cabracant a number of these documents. It simply failed to do so. And it says that it was inadvertent, but it might be inadvertent if she forgets to serve Mr. Cabracant once, twice, but they did it time after time after time, and now claim, and they didn't have to serve him anyway, which seems to suggest, well, they weren't serving him because they didn't feel they needed to serve him. So as a result, Mr. Cabracant was in a position, when it came time to trial, and Mr. Kennedy's affidavit indicates, they weren't able to – they waited until the very last moment before trial started to decide who was going to examine what witness. But because Mr. Cabracant didn't have the information necessary to examine most of the witnesses, he was left to examine one witness because he did have information to examine him. I was wondering, this was the second trial. It was. So there are no surprises, I assume. I assume that the same witnesses who testified at the first trial testified at the second trial, and that, you know, there was nothing new that mattered. But I could understand this argument if this were the first trial. I'm more sympathetic to it. It's not entirely true because there was additional discovery and additional reports, for example, the multiple reports of investigation that the agents, that the ATF agent had prepared, that Mr. Cabracant had been asking for from the beginning of the first trial, which had never been turned over. But in fact, as we now know from Mr. Kennedy, he was able to review with the government once he took over the case. So there was a lot of information that had not been provided at the first trial that, in fact, was then made available for the second trial. So, you know, the defense strategy could have been completely different, but Mr. Cabracant was kind of left hanging. He wasn't really in a position to control the presentation of the defense because he didn't have the information to do it. Can you give me some help understanding the nature of the information that's new in the second trial that Mr. Kennedy has preferential access to? I'll say it that way. Well, some of the things that, as I said, these reports of investigations involving, that were prepared by the ATF agents, regarding the confidential informant, Mr. Kramer, and how they used him in a number of investigations in addition to Mr. Cabracant in various other states. But his identity, of course, is no longer confidential. We're just calling him that just because that's his label, right? I mean, he testified at the first trial. That's right. There's no question as to his identity. There is a question, however, about what Mr. Kramer was doing and how the government had been using him and what the government knew about Mr. Kramer. I believe it was just the ground for the reversible first time around. Well, it was part of the ground for the reversible first time around was simply Actually, the defense did know about the stuff involving the murder that he had committed. That simply the court prohibited. But he wasn't allowed to use it the first time around. But it was used the second time. It was. And what else do they need? I mean, it's devastating. It's fairly devastating in terms of how a jury would view this witness. I'm shocked myself that this guy got probation for his role in this case. But the jury knew all of that. It did. And it may not have made, ultimately, a difference in the outcome. But the fact is we're dealing with a Feretta violation, a denial of the right of self-representation. That's per se reversible error. That's a structural error. I sort of have a question about that. I agree with you that a Feretta violation is per se error in part because there's no way to measure prejudice. Because he's basically chosen to go down a road that gives him not the effective assistance of counsel. So there's no way when you're dealing with the concept of self-representation. I'm not so sure you can't formulate an argument that not every little incursion that might occur in the course of a trial, let's say not showing of a particular document that may have had no impact at all, is not subject to some sort of harmless error argument. In the Second Circuit, with respect to excluding the public from trial, they haven't adopted a harmless error rule, but they said it's not such a big – I forget the word that they actually used to describe it. They said it's sort of more close to a kind of a de minimis incursion. So the public was out of the room for five minutes, but nothing of consequence happened. But we won't call it harmless error. We'll call it de minimis violation. Why isn't that so here when you're not dealing with a kind of total denial? You're letting this guy drive everybody crazy and doing what he wants. And so they don't turn over some documents that are basically cumulative and that wouldn't have had any impact if he had used them the right way. Well, what we're dealing with is whether or not he was able to control the defense and whether he was able to send a message to the jury that he, in fact, was in control. And what we have here is –  Beg your pardon? It doesn't seem to me that that affected whatever message the jury was getting or was not getting because the jury didn't know precisely what he got and what he didn't get. They just – they were instructed. They saw his participation. I mean, all of what his role was was apparent to the jury. Their observation of him didn't – what they perceived about his self-representation. That doesn't seem to me to be impacted at all by whether he saw a particular document or not. Well, except for the fact that, as we know, Mr. Fabrikant was not able to cross-examine any of the witnesses but for one, and that was because he didn't have the material necessary to do that. And while it may be that certainly – Again, this was a second trial. All of these people testified in the first trial. He knew what everybody was going to say. They were cross-examined, and we're not even clear as to what it is that he didn't see in terms of how it might impact. You're just making an argument. I understand it, but we don't – I mean, it just doesn't – Well – It's not impressive because all these people testified. He had the greatest possible discovery that you could have, which was all of the evidence at the first trial. And so there's some report that's not turned over, but then we don't know exactly what it is or what it may have added, and we're supposed to reverse the conviction on that ground. Well, there were a number of other things that did take place at this trial. Yeah, I know. For example – I'm just dealing with one more. Sure. Well, what we do know is, for example, they introduced excerpts of Mr. Fabrikant's testimony from the first trial in the second trial. Right. They selected excerpts. While the court said that objections could be made to whether or not additional portions of the testimony could be introduced, the excerpts the government wanted to introduce were supposed to be submitted to Mr. Fabrikant. They were not. The verdict form and the proposed jury instructions were not sent to Mr. Fabrikant. So, for example, he wanted an instruction on simple possession. In fact, when he gave his opening statement, he said, look, convict me of simple possession for count five because I possess that. Well, he didn't get that instruction because the government didn't turn over the jury and send the jury to serve him with the jury instructions. Mr. Kennedy didn't serve him with the jury instructions. There was no discussion of government. Wait a minute. Wait a minute. My understanding from Mr. Kennedy's affidavit or statement is that he got the jury and proposed joint jury instructions. He and his researcher looked at them for a short time, and then he sent them to Mr. Fabrikant. Well, Mr. Fabrikant was in prison, but Mr. Fabrikant was at that time too busy to look at them. That's right. He didn't send them. He sent them over with an attorney from the office. So it's not as though Mr. Fabrikant didn't see them. He saw them actually fairly early on. They weren't served on him. They were not served on him. They were transmitted through Mr. Kennedy, which I understand you say is a problem, but I don't want the misimpression that he didn't see them fairly early on. Well, he certainly was. He was given access to them through an attorney from the office. Well, more than access, I think he was simply given them. Isn't that right? My understanding from the statement from Kennedy is that they were the pieces of paper with the instructions on them were taken to Mr. Fabrikant. And it may be. Okay. That may be the case. But the fact is he was not served by the government. I got that. And then, and since he had not been. Well, so he's served by somebody else. What difference does it make? You can't just say, well, Feretta doesn't, there's no such thing as homeless, et cetera. I mean, what difference does it make? Who serves him? Because then there was a sidebar conference just prior to the jury instructions being given. Mr. Fabrikant wasn't given an opportunity to participate in that sidebar discussion. There were a number of things that happened because Mr. Kennedy was being treated as de facto sole counsel. Mr. Fabrikant was not in a position to represent himself. And one could make the argument, well, so what? He wasn't prejudiced. Well, the fact is he was denied his right of self-representation. And the Constitution may be inconvenient. If we were. But the fact is that's the rule. The Supreme Court decision might be wrong. Yeah. Instead of the Constitution being inconvenient. If with respect to the jury instruction on lesser included offense of sole possession, it were to be set aside because of a forerunner violation, because I think it would do less to do with the fact that they weren't served on him, but more to do with the fact that Kennedy seems to have agreed more or less on his behalf that the instructions were fine. And maybe if I construe the evidence very much in favor of Mr. Fabrikant, he wasn't given an opportunity, a realistic opportunity to object. He's cut off a couple of times. Okay. So we set aside the conviction on count five. What practical consequence does that have for the sentence of Mr. Fabrikant? Essentially none. It gets the special assessment back. That's the reason we can't apply the concurrent sentence doctrine. Yes. But, again, but this is just one of several examples of the fact that Mr. Fabrikant was not allowed to control his defense. And that's where we have the problem. And that's where the Constitution was violated. And that's why he's entitled under the law to a new trial. Okay. Let's hear from the AUSA. Absolutely. We'll give you a chance to respond. Thank you, Your Honor. Good morning, Your Honors. April Christine on behalf of the United States, the plaintiff appellee in this case. I, too, if I may, was planning on focusing on the main appeal and would not focus on the pro se issues unless the court has any questions. Right. And if I may, before getting into the main part of my argument, if I may just clarify the issue with the documents. That seems to be a big issue that appellant has raised. The documents the defendant was referring to in the district court were the reports of investigation of the broader investigation of the Hells Angels Motorcycle Club. There was a broader investigation, and this was litigated in the district court, that involved chapters in other states, including Nevada, Arizona, and the San Fernando Valley chapter here in California. This case was an offshoot of the investigation of the San Fernando Valley chapter. The reports the defendant continued to refer to in the district court were reports from those other investigations, and the government's position in the district court was that those documents were irrelevant to this case and that it was not discovery to this case. During the retrial and prior to the retrial, the government offered to allow co-counsel to inspect those documents as a courtesy. The government also submitted those documents to the district court in camera and asked for an order of non-disclosure. The district court, in fact, denied the defendant's motion for discovery of those other documents, and the court did continue to remind the government of its discovery obligation, and the government informed the court that it was aware and acknowledged its continuing discovery obligation. So the government's position in the district court was that all of those documents the defendant personally wanted to have copies of was not discovery in this case and was not relevant to this case. So I just wanted to clarify that point. The defendant here is challenging his convictions based on retrial, which means that the validity of his waiver of his right to counsel must be looked at at the point of remand when he asks to represent himself. At that point, as Your Honor has already acknowledged, the defendant had already been aware of the dangers and disadvantages of self-representation. He had already been through his first trial. He had already seen the government's evidence in its entirety. He had heard the government's witnesses testify. He had already been convicted of all of the charges in the first superseding indictment. He had already heard the government's proof about his prior six felony drug convictions. He had already litigated the issue of the 851 enhancement, and he had already been sentenced to the mandatory minimum of life imprisonment. In addition to that, he had previously represented himself for a number of years, in his words, more than 30 times in state and federal cases, including four state appeal cases that resulted in a published opinion, which means that this defendant had been through numerous FREDA hearings over the course of his criminal career. The record also reflects that this defendant was aware that his election was not irrevocable, that he could at any time withdraw that election and ask to be represented by counsel, and he did so a number of times throughout this case, particularly in February 2008 after remand, when he asked the court to elevate advisory counsel's status to co-counsel. Now, this court has acknowledged that a district court can be put in an untenable position when a defendant vacillates from wanting to represent himself to wanting to be counseled. But in this case, the district court was very careful and very meticulously clarified with the defendant what the term co-counsel meant, and the court went through everything. The court talked to the defendant about the fact that co-counsel would have the authority to marshal his investigation, would have the authority to speak to the government on his behalf, would have the authority to act on his behalf, would, in fact, be his attorney. And the court made absolutely clear and ensured that the defendant understood what that meant, and defendant's response, 110%. The defendant was 110% clear that co-counsel would, in fact, be his lawyer. So in this case, the defendant was counseled prior to trial and during trial. But in any event, co-counsel's participation was not a usurpation of the defendant's control of his case because he was authorized to have that participation by the defendant, not just by the court, but by the defendant. This case is very different from McCaskill and Savage. In those cases, the situation in those cases was where there was a defendant that did not want standby counsel, but standby counsel was appointed. And so the issue in those cases was to what extent does standby counsel's participation over the objection of the defendant rise to the level of a constitutional violation. But that is not the case that we had here. In this case, we had a situation where the defendant asked for advisory counsel to be elevated to co-counsel, meaning he asked that co-counsel be allowed to participate. And in fact, the situation that we have here is where there was an arrangement between defendant and co-counsel. And this arrangement agreed that co-counsel would be the lead counsel. And this arrangement was agreed by both defendant and co-counsel. It was communicated to the district court. And there were a number of times during the pretrial hearings and during trial where the defendant deferred to co-counsel and allowed co-counsel to take the lead. And the arrangement at trial was communicated to the court in a sheet that the court gave. And the court acknowledged that it received that sheet in the record and that that sheet talked about the arrangement that defendant had and co-counsel had about who would handle what portions of the trial. So in this case, the defendant had control of his defense, and he gave control over portions of the trial, major portions of the trial, to co-counsel. But the main key here for this issue for the court is, as has already been recognized, the defendant never complained to the district court about co-counsel's participation. He never raised that issue. So this case is unlike Savage because there is nothing in the record that shows that there was any acrimony in the relationship between defendant and co-counsel. In fact, the record shows that they communicated well. And when they had a difference of opinion, that they discussed that difference of opinion, and it was resolved at some point because defendant never raised that issue with the court. For example, when defendant talked about his right to testify, the district court asked the defendant if he was going to testify. And co-counsel's response was that defendant would not testify. Defendant's response was, we're still considering it. He did not say, I want to testify. His response was, we're still considering it, and it's a small possibility. And that was the only reference. And later on, defendant decided. Now did Mr. Fabricant say, I understand we're still considering it. Did he also say it's a small possibility, or was that Kennedy who said unlikely? That was defendant said it was a small possibility, and counsel said it's unlikely. And so while there may have been a difference of opinion, the record doesn't show that there was any acrimony there. And the issue was never raised again. Defendant never raised that issue with the court. There was no evidence that there was any acrimony in the relationship, and so there was no trigger in the record that would have caused the court to even inquire about the defendant's decision to waive his right to testify. And that, too, goes along with the issue of counsel's participation being authorized by the defendant. Did he testify at the first trial? He did testify at the first trial, Your Honor. And in fact, and I don't know if the court is getting to the issue with Harrison, but Oh, yes, I know that's in the case. I should have remembered. Go ahead. But in moving to the district courts. And he was presumably, with all these prior convictions, he testified at the first trial? He did, Your Honor. And were these convictions used to impeach his credibility? Two of the convictions were, Your Honor. Only two of them. The court allowed only two of the convictions, and it was the two convictions for defendant's drug trafficking for methamphetamine under 404B. The court did allow them under 404B. And the defendant himself admitted the convictions during his direct examination, during his testimony in the first trial. And in fact, the motivation for defendant's testimony in the first trial is actually stated by his attorney in the opening statement. So if we're talking about the issue with Harrison, the district court did not err in admitting portions of his prior testimony because there were no inadmissible or illegally obtained confessions that were admissible in this case. And in fact, the purpose or the objective behind Harrison and behind the Harrison exception to the general rule that prior testimony is admissible was to deter unconstitutional police practice. But there was no unconstitutional police practice in this case. And in fact, the Supreme Court in Harrison explained that in using prior testimony that was compelled as a result of the inadmissible introduction of illegally obtained confession invoked the same principle that would prohibit the use of the illegally obtained confession itself. And that was as fruits of the poisonous tree. But there were no fruits of the poisonous tree here because there was no illegally obtained evidence, confession or otherwise, that was admissibly admitted. And so here there was no Harrison exception issue in this case. And certainly the defendant has suggested that perhaps this court should extend the Harrison exception to cover the constitutional violation that was found in this case. And the government submits that it would not be warranted in this case even if the circuit were to hold that as law. Because in this case, again, there was no illegally obtained evidence that was inadmissibly admitted. But even more than that, the defendant's motive for testifying in the first trial was not compelled by the court's ruling about the informant's cross-examination. It was to dispute the government's evidence of the recorded drug deals. The drug deals that defendant conducted with the informant were all recorded. And his statements were very clear. The amount of drugs that was sold, the price that the drugs were sold, everything was very clear in the recording. And so as he stated in his opening statement, he was going to tell the jury exactly what happened during those drug deals. And since the drug deals involved only the defendant and the informant, defendant had to testify in order to present that defense. And his defense was that the drug that he sold the informant was not methamphetamine, but it was hashish. And that instead the informant got methamphetamine from a red toolbox and then gave that to ATF. And so defendant was the only one that could have presented that red toolbox defense. And that was his motivation for testifying. It was not compelled by any illegally obtained evidence. So again, here, the district court did not err in admitting the testimony. And further, on the rule of completeness, the defendant never objected to the portions of the testimony that were admitted. The defendant never alleged that there was any misleading or anything deficient in the portions of the testimony that was admitted. And so in this case, the rule of completeness never came into play because once defense counsel inspected the portions that the government intended to admit, and once those portions were admitted, the court gave defense the opportunity to object and gave the defense the opportunity to offer additional portions, and the defense did not. And so the rule of completeness never came into play. So again, the key here is that the defendant did not object to those portions that were admitted and did not ask to have any additional portions admitted under the Rule 106, Rule of Completeness. And so the district court did not err in admitting the testimony. As far as the ‑‑ there was a mention of a sidebar conversation. And when I went back and reviewed the record, there was a reference in the record to the district court asking that counsel for both sides come to sidebar. The record does not indicate whether the defendant was present or not. But even if the defendant was not present, there was nothing in the court's statement that precluded the defendant from being present at sidebar. Was the defendant shackled during trial? I don't recall the defendant being shackled during trial because the defendant made his opening statement and he was not shackled during his opening statement. So the defendant was free to handle his papers and he was free to move around. The defendant also, and this is what the record does show, the defendant also did not ask to be present during that sidebar and he did not object to being excluded if, in fact, he was excluded. And so this case is very similar to Sherwood. And in Sherwood, the defendant was not present at the sidebar discussion. But this court held that defendant did not indicate he wanted to be present and he did not object when he wasn't present. And so the defendant waived his right to be present at sidebar. This case is even further than that. This case, not only did the defendant not object at the time to being excluded, he did not ask the district court to be present at the sidebar, but, in fact, we have this arrangement between him and co-counsel, that co-counsel would be lead counsel and that co-counsel would be authorized to speak on his behalf and to act on his behalf. So, again, even if he were not present, co-counsel was present with his express authorization. And so there was no error here and there certainly is no reversible plain error here. As far as his reasonable access to materials, there's no violation. Defendant was not denied reasonable access to materials. The items the defendant mentions, that appellant mentions, were actually items that were litigated prior to defendant's first trial. Take, for instance, the district court's ruling at retrial of the law of the case. The motions that were relevant to the court's law of the case ruling were motions that were raised and litigated at defendant's first trial at a time when defendant was represented by counsel. So there is no carryover for any violation or any violation at all to the retrial based on the court's law of the motion ruling. The items that had to do with the ex parte request and the subpoenas, again, were items that were litigated prior to the first trial. And those rulings were not re-litigated at retrial. And, in fact, when the issue was raised at retrial, the district court stated that the law of the case rulings were not inflexible and that if those rulings were found to be erroneous or if there were changed circumstances, that the court would readdress them. But the court also found that there were no changed circumstances that would merit redressing. Now, again, we separate that from the 851 issue because in the 851 enhancement, defendant actually was allowed to re-litigate that issue. Now, I know appellant has made a considerable amount of concern about the fact that when defendant asked to re-litigate the issue, the district court said no. But, in fact, what the district court said was that defendant had not given the district court any justification to re-litigate that issue. But even aside from the court's initial ruling, once the re-sentencing occurred after defendant had been convicted on retrial, defense counsel did, in fact, argue that issue in a sentencing position paper and argued that issue again at the re-sentencing. And the government argued that issue. So re-litigate and re-argue may not be exactly the same. Was there a request by the defendant at the 851 hearing to introduce evidence that had not been introduced the prior time around? The first time around, as I recall, the defendant was under the mistaken impression that it was the government's burden of proof to show, with respect to those six prior convictions, a valid Feretta waiver with five of them, and the other, I guess, it was counsel. But now the defendant knows very well that it's his burden. So if he doesn't introduce any evidence, he's cooked. Did he try to introduce evidence, and the district judge said no? He did not, Your Honor. In fact, and Your Honor is accurate about the sequence of events. At the first 851 hearing, the defendant was under the misimpression that the government had to prove that his prior convictions were constitutionally valid. The government, in fact, was ready to introduce evidence about the defendant's six prior convictions and did admit certified conviction documents. The defendant himself stipulated that he had been convicted six times of prior drug felony convictions. So he stipulated to his six prior convictions, and, in fact, they were over five years old at the point of retrial. They were over five years. So the only thing he could have challenged them on was the fact that, in his words, they were uncounseled. Once the government admitted additional evidence showing, in fact, although it was not the government's burden, the government did admit additional documents showing that, in fact, one of those prior six convictions was counseled. Defendant had the burden to show that all five remaining were uncounseled, and defendant did not meet his burden of making that showing. But to come back to my question, did he try to introduce evidence with respect to those five that the district court didn't let him admit? He did not. He did not. The only thing the defendant did was to point to the documents that the government introduced to say that they were not sufficient. That was all the defendant did. And did the government say, I mean, part of the problem here is I suspect we're dealing with documents that are kind of hard to come by. We're dealing with incomplete state records from a long time ago. It may be that the only evidence that existed was the evidence the government put in. That may be the case, but the evidence that the government did put in certainly went beyond what the government was required to put in. And, in fact, all that the government needed to establish the six prior convictions were the conviction documents, the judgment and commitment. And so the government established those. And unless the Court has any more questions, then the government would ask that the Court affirm the convictions and affirm the sentence and the judgment in this case. Okay. Thank you. Mr. Levy. I can't remember how much time you saved. Looks like the clerk says a minute and 16 seconds. Say what you need to say. Thank you. Your Honor, I believe opposing counsel, if I heard her correctly, suggested that there was an agreement that Mr. Fabricant agreed that Mr. Kennedy would be the counsel. Mr. Kennedy's declaration, Paragraph 2 on the year 1898, makes very clear that the agreement was that Mr. Fabricant was the counsel, not Mr. Kennedy. She said he agreed that he would be co-counsel, that Mr. Kennedy would be co-counsel. Well, it was the Court that appointed Mr. Kennedy as co-counsel. But, again, as we argued in the brief. But you explained to the defendant exactly what he would be doing, and the defendant agreed. That's right, that he would serve as co-counsel. That does not mean that he ceded all authority and said, Mr. Kennedy is now my sole attorney and I have no control over this case. I know, but then this becomes a kind of a hybrid case. He sees it in part and he retains it in part. Well, it's hybrid representation. It's classic hybrid representation that the Supreme Court and this Court have dealt with in the past. And as we cited in our brief, there are numerous cases that say there's no distinction between whether it's co-counsel, advisory counsel, standby counsel, all forms of hybrid representation are treated the same, and that the defendant retains total authority over the case. And if defense counsel who serves that authority is fired. Except to the extent that the judge says, well, call them what you will, co-counsel is going to have the following responsibilities. And he says, I agree 110 percent. So, in effect, it's a kind of a waiver of a partial waiver of his verreda. No, Your Honor, because I think that's a vast overstatement of what happened here, the colloquy between the judge and Mr. Fabrikant when co-counsel was appointed. All the Court said was you understand that he's now in a position to appoint the investigator and marshal the evidence. There was nothing that said he now is the person who acts solely as your attorney. That certainly wasn't the case there. That's true. Okay. All right. Thank you. Thank you very much. The case of United States v. Fabrikant is now submitted for decision. Very nice arguments.
judges: Korman, Goodwin, Fletcher